UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GREGG LIN WOODARD,

          Plaintiff,               Case No. 4:18-cv-11099
                                           District Judge Linda V. Parker
v.                                Magistrate Judge Anthony P. Patti

COMMISSIONER OF
SOCIAL SECURITY
ADMINISTRATION,

          Defendant.
_____/

## REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DE 14), GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DE 16) and AFFIRM THE COMMISSIONER'S DECISION

**I.     RECOMMENDATION**:  For the reasons that follow, it is

**RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary

judgment (DE 14), **GRANT** Defendant's motion for summary judgment (DE 16),

and **AFFIRM** the Commissioner's decision.

**II.    REPORT**

Plaintiff, Gregg Lin Woodard, brings this action under 42 U.S.C. §§ 405(g),

1383(c)(3) for review of a final decision of the Commissioner of Social Security

("Commissioner") denying his application for disability insurance (DI) benefits.

This matter is before the United States Magistrate Judge for a Report and

Recommendation on Plaintiff's motion for summary judgment (DE 14), the Commissioner's cross-motion for summary judgment (DE 16), Plaintiff's reply (DE 17) and the administrative record (DE 10).

### A.     Background and Administrative History

In the application summary for DI benefits under Title II, Plaintiff alleges his disability began on August 31, 2009, at the age of 44.  (R. at 192.)  In his disability report, he lists several conditions (post-traumatic stress disorder (PTSD), anxiety, depression, diabetes, high blood pressure, and high cholesterol) as limiting his ability to work.  (R. at 209.)  His application was denied on December 5, 2014.  (R. at 79-91.)

It seems that, on January 16, 2015, Plaintiff filed an application for supplemental security income (SSI) benefits under Title XVI.  (*See* R. at 15.)[1]  At the same time, Plaintiff requested a hearing by an Administrative Law Judge ("ALJ").  (R. at 104-105.)  On September 9, 2016, ALJ Michael R. Dunn held a hearing, but it was adjourned to follow up on Plaintiff's application for SSI benefits.  (R. at 32-39.)  ALJ Dunn held a second hearing on December 7, 2016, at which Plaintiff and a vocational expert (VE), Timothy Shaner, testified.  (R. at 40-

---

[1] Although the Court has not located Plaintiff's SSI application in the record, the existence of two sets of disability reports is consistent with two applications. (*Compare* R. at 205-216, *with* R. at 259-265.)

78.)  On that same date, Plaintiff amended his alleged onset date to January 17, 2014.  (R. at 204.)  On April 3, 2017, ALJ Dunn issued an opinion, which determined that Plaintiff was not disabled within the meaning of the Social Security Act.  (R. at 12-31.)

Plaintiff submitted a request for review of the hearing decision/order.  (R. at 188-189.)  However, on February 9, 2018, the Appeals Council denied Plaintiff's request for review.  (R. at 1-6.)  Thus, ALJ Dunn's decision became the Commissioner's final decision.

Plaintiff timely commenced the instant action on April 5, 2018.

**B.**     **The Administrative Decision**

Pursuant to 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), at **Step 1** of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 17, 2014, the amended alleged onset date.  (R. at 17.)  At **Step 2**, the ALJ found that Plaintiff had the following severe impairments:  insulin dependent diabetes mellitus (DM); asthma; gastroesophageal reflux disease (GERDS); stage II kidney disease, obesity; affective disorder; and anxiety disorder.  (*Id*. at 17-18.)  At **Step 3**, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  (*Id*. at 18-19.)  **Between Steps 3 and**

**4** of the sequential process, the ALJ evaluated Plaintiff's residual functional

capacity ("RFC")[2] and determined that Plaintiff had the RFC:

> . . . to perform light work . . .; pushing and pulling as much as lifting and carrying [*i.e.*, *exertional limitations*]; must avoid concentrated exposure to pulmonary irritants; never operat[e] a motor vehicle as a job duty [*i.e.*, *environmental limitations*]; limited to simple, routine and repetitive unskilled tasks performed at [specific vocational preparation (SVP)] 1 or 2 . . . [*i.e., understanding and memory limitations*][;] free of fast paced production requirements [*i.e., sustained concentration and persistence limitations*] with few if any work place changes [*i.e., adaptation limitation*]; occasional interaction with supervisors and co-workers and no interaction with the public [*i.e.*, *social interaction limitations*].

(*Id*. at 19-24.)  At **Step 4**, the ALJ determined that Plaintiff was unable to perform

any past relevant work.  (*Id*. at 24-25.)  At **Step 5**, considering Plaintiff's age,

education, work experience, and RFC, the ALJ determined that there were jobs that

existed in significant numbers in the national economy that Plaintiff could perform,

such as mail clerk, officer helper, and inspector.  (*Id*. at 25-26.)  The ALJ therefore

concluded that Plaintiff had not been under a disability, as defined in the Social

Security Act, from January17, 2014, through the date of the decision.  (*Id*. at 26.)

## C.     Standard of Review

---

[2] The claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard v. Comm'r of Soc. Sec*., 276 F.3d 235, 239 (6th Cir. 2002).

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  *See also* 42 U.S.C. § 1383(c)(3).  When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).  In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility."  *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from

[the] weight'" of the Commissioner's decision.  *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).  Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).  Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

> **D.   Analysis**

The parties are at odds regarding the propriety of the ALJ's physical *and* mental RFC determination.  (DE 14 at 20-28, DE 16 at 5-15, DE 17 at 1-6.)  On appeal, Plaintiff contends that the RFC determination was faulty because:  **(1)** the ALJ failed to develop the record by not ordering a consultative examination to obtain an opinion regarding Plaintiff's physical limitations; and, **(2)** the ALJ improperly subordinated the opinion of Plaintiff's treating psychiatrist to the non-examining state agency psychological opinion without reasonable rationale.  (DE 14 at 5, 20-28.)

### 1. Physical health medical evidence of record (MER)

The ALJ's RFC discussion cites several medical records regarding

Plaintiff's physical health, including, in pertinent part:

- February 7, 2014 records from Genesys Regional Medical Center (R. at 434), at which time Plaintiff appears to have reported that his DM and hypertension (HTN) were stable;

- Christine Ly, M.D.'s / Brenda Fortunate, D.O.'s February 11, 2014 notes, at which Plaintiff presented "for paperwork regarding disability[,]" (R. at 438);

- February 17, 2014 records from McLaren Regional Medical Center, when Plaintiff appeared for an injury to his left hand and which note a 4th metacarpal shaft fracture (R. at 486);[3]

- June 13, 2014 notes from Genesys Regional Medical Center, when Plaintiff presented with a rash, but his physical examination was, for the most part, unremarkable (R. at 445, 447-448)[4]

- A December 1, 2014 left ankle radiography, which concluded there was "[n]o fracture[.]" (R. at 585)

- A February 23, 2015 ultrasound of the abdomen, which concluded there was "hepatosplenomegaly with prominent increased echotexture of the liver with poor penetration from chronic liver disease and fatty infiltration." (R. at 744)

---

[3] The medical record describes the diagnosis in one place as relating to the right hand an in another as relating to the left hand. (R. at 486.) The Court suspects this was a typographical error, given the same-day imaging of the left hand and left wrist. (R. at 489-490.)

[4] The ALJ seems to attribute these notes to Christine Ly, M.D. (R. at 22.) However, the Court notes that the notes appear to have been endorsed by other individuals. (R. at 449.)

- The March 30, 2015 ophthalmic evaluation by Robert J. Zendler II, D.O., P.C., who seems to have diagnosed glaucoma (R. at 468);

- A May 8, 2015 chest x-ray, which concluded there was "[n]o acute pulmonary disease[.]"  (R. at 567)

- Arvind Kunadi, M.D.'s May 20, 2015 notes, which reflect Plaintiff's report of a long history of HTN and DM "for which he is very noncompliant with his mediations[,]" and which also reflect a diagnosis of Stage 2-3 chronic kidney disease, "[p]ossibly . . . due to his long standing [history] of HTN and DM." (R. at 690-691)

- A July 9, 2015 brain CT, in which "[n]o acute parenchymal abnormality [was] seen . . . ."  (R. at 545)

- July 9, 2015  right ankle x-rays, which, although it revealed "soft tissue swelling about the ankle" and a "[s]mall plantar spur[,]" did not show fracture or dislocation (R. at 547)

- March 6, 2016 records from McLaren, which reflect Plaintiff's complaint of right foot pain and swelling without injury (R. at 508), a normal x-ray of Plaintiff's right foot (R. at 525), and discharge instructions for plantar fasciitis (R. at 481-482); and,

- March 22, 2016 notes from Genesys Regional Medical Center, which reflect chief complaints of plantar fasciitis and medication refills, a report that his "pain is now under control[,]" (R. at 763), and which further reflect that Plaintiff weighed 267 pounds, had a body mass index (BMI) of 36.21, and his physical exam was largely unremarkable (R. at 765)

- A June 20, 2016 McLaren Regional Medical Center Emergency Department Triage Report, which documented Plaintiff's complaint of chest pain (R. at 501)

- The June 21, 2016 notes of Curtis Irvine, M.D. / Daniel Bielak, M.D., to whom Plaintiff reported "trouble keeping his blood

glucose up[,]" but also that he "normally takes 74U of Lantus which usually controls his diabetes . . . ."  (R. at 752)

- July 18, 2016 records from Genesys Regional Medical Center, which reflect, *inter alia*:  continued complaints of abdominal pain, a normal physical exam, assessments of anxiety disorder and generalized abdominal pain, and a plan describing Plaintiff's type 2 DM as "uncontrolled, without complications" (R. at 852-854)

- The October 4, 2016 notes of Kunal Bakshi, M.D./Meggan Robinson, D.O., which reflect that Plaintiff's "generalized abdominal pain . . . has partially resolved since [his] last visit[,]" but he had "still . . . not made an appointment with [a gastroenterologist] regarding abdominal pain[.]"  (R. at 868)

(R. at 21-23.)  Then, the ALJ explained why "[t]he physical limitations are supported in term[s] of the presence of pathology[,]" and "the evidence does not support the degree of impairment alleged, *i.e.*, total disability."  (R. at 23-24.) After discussing asthma, fatigue and shortness of breath on exertion, foot pain, chronic kidney disease, HTN, and diabetes, the ALJ stated that "[t]he combination of his physical impairments, including his obesity, limit him to light work with no exposure to pulmonary irritants."  (R. at 24.)

### a.    An ALJ is not *required* to develop the record.

Plaintiff argues that the ALJ's physical RFC assessment is not supported by substantial evidence, because "he failed to develop the record by not ordering a consultative examination to obtain an opinion regarding Plaintiff's physical limitations."  (DE 14 at 20.)  Preliminarily, a claimant must prove to the SSA that

he or she is blind or disabled.  20 C.F.R. § 404.1512(a)(1).  Moreover, the claimant "must inform [the SSA] about or submit all evidence known to [him or her] that relates to whether or not [he or she is] blind or disabled . . . ."  (*Id*.)

"The burden of providing a complete record, defined as evidence complete and detailed enough to enable the Secretary to make a disability determination, rests with the claimant."  *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986) (citing 20 C.F.R. §§ 416.912, 416.913(d)).  As Plaintiff acknowledges, "the regulations do not require an ALJ to refer a claimant to a consultative specialist, but simply grant him the authority to do so if the existing medical sources do not contain sufficient evidence to make a determination." *Landsaw*, 803 F.2d at 214 (citing 20 C.F.R. § 416.917(a)).  (DE 14 at 24.)

Pointedly, "[t]he nub of the present dispute thus centers on the usual question of whether substantial evidence exists and not whether a supporting medical opinion was a prerequisite to fashioning the RFC."  *Rogers v. Comm'r of Soc. Sec.*, No. 4:18-CV-10561, 2019 WL 490384, at *19 (E.D. Mich. Jan. 7, 2019) (Morris, M.J.), *report and recommendation adopted*, No. 18-CV-10561, 2019 WL 480374 (E.D. Mich. Feb. 7, 2019) (Leitman, J.).

Plaintiff contends that the RFC is "improperly based upon the ALJ's lay interpretation of *raw medical data*[,]" *i.e.*, "making unqualified assumptions regarding the ways Plaintiff's medical conditions impact his functioning."  (DE 14

at 20-21 (emphasis added).)  "'Raw medical data'" pertains to medical data that has not been interpreted such as that contained in charts, notes, laboratory results, imaging results, etc." *Arnold v. Colvin*, No. 3:14-CV-00442, 2014 WL 5822875, at *10 (M.D. Tenn. Nov. 10, 2014).[5]  Plaintiff also claims that the record is "devoid of a single functional assessment from a treating or examining source[,]" and that "there is no opinion evidence which supports the RFC for light work[.]"  (DE 14 at 23, 24.)

When determining a claimant's RFC, "[i]t is well established that the ALJ may not substitute his medical judgment for that of the claimant's physicians." *Brown v. Comm'r of Soc. Sec.*, No. 1:14-CV-236, 2015 WL 1431521, at *7 (W.D. Mich. Mar. 27, 2015) (referencing *Meece v. Barnhart*, 192 F.App'x 456, 465 (6th Cir. 2006)).)  *See also Simpson v. Comm'r of Soc. Sec.*, 344 F.App'x 181, 194 (6th Cir. 2009).  Moreover, "[t]he administrative law judge is simply not qualified to interpret raw clinical data and diagnoses in functional terms."  *Henning v. Colvin*, No. 3:13-CV-753-H, 2014 WL 4364622, at *3 (W.D. Ky. Sept. 3, 2014) (citations omitted).  However, "an ALJ does not improperly assume the role of a medical expert by assessing the medical and non-medical evidence before rendering a

---

[5] The definition of raw evidence appears to be somewhat narrower, *i.e.*, limited to such things as lab results, vital signs, and films that have not been interpreted by a physician, but not necessarily "charts" or "notes."  *See Rudd*, 531 F. App'x at 727 ("The x-rays of Rudd's hands and lumbar spine, which were the only raw medical data, had already been read and interpreted by a radiologist.").

residual functional capacity finding." *Poe v. Comm'r of Soc. Sec.*, 342 F.App'x 149, 157 (6th Cir. 2009). Nevertheless, the ALJ remains obligated to make a logical bridge between the evidence relied on and the conclusion reached. *See Gross v. Comm'r of Soc. Sec.*, 247 F.Supp.3d 824, 829-30 (E.D. Mich. 2017.).

Even if ALJ Dunn did not rely upon physical impairment opinion evidence here, he was not required "to develop the record and obtain opinion evidence from a qualified medical source . . . ." (DE 14 at 21.) As the Sixth Circuit has stated:

> . . . the Commissioner has final responsibility for deciding an individual's RFC, SSR 96–5p, 1996 WL 374183 (July 2, 1996), and to require the ALJ to base her RFC finding on a physician's opinion, "would, in effect, confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability, and thus would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled."

*Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. Sept. 5, 2013) (quoting SSR 96-5P, 1996 WL 374183, *2 (S.S.A. July 2, 1996)). "An RFC is an 'administrative finding,' and the final responsibility for determining an individual's RFC is reserved to the Commissioner." *Shepard v. Comm'r of Soc. Sec.*, 705 F.App'x 435, 442 (6th Cir. 2017) (citing SSR 96-5p). *See also Mokbel-Aljahmi v. Comm'r of Soc. Sec.*, 732 F. App'x 395, 401 (6th Cir. 2018) ("We have previously rejected the argument that a residual functional capacity determination cannot be supported by substantial evidence unless a physician offers an opinion consistent with that of the ALJ.").

12

True, there is significant case law in this district confirming the general principle that the ALJ "must generally obtain a medical expert opinion" when formulating the RFC unless the "'medical evidence shows relatively little physical impairment' such that the ALJ can permissibly render a commonsense judgment about functional capacity[.]" *Guido v. Comm'r of Soc. Sec.*, No. 13-cv-13520, 2014 WL 4771929, at \*12 (E.D. Mich. Sept. 24, 2014) (Murphy, J., *adopting report and recommendation of* Grand, M.J.) (quoting *Deskin v. Comm'r of Soc. Sec.*, 605 F.Supp.2d 908, 912 (N.D. Ohio 2008)). *See also Gross*, 247 F. Supp. 3d 824, 828 (E.D. Mich. 2017) (Patti, M.J.); *Lindsey v. Comm'r of Soc. Sec.*, No. 12-12585, 2013 WL 6095545, at \*8 (E.D. Mich. Nov. 20, 2013) (Rosen, C.J., adopting report and recommendation of Binder, M.J.). However, an "argument that the ALJ erred because he 'did not rely on any physician's opinion in formulating his RFC' has been squarely rejected by the Sixth Circuit." *Davis v. Comm'r of Soc. Sec. Admin.*, No. 2:18-CV-10228, 2019 WL 2051899, at \*6 (E.D. Mich. Feb. 19, 2019) (Patti, M.J.) (referencing *Mokbel-Aljahmi* and *Rudd*), *report and recommendation adopted sub nom. Davis v. Comm'r of Soc. Sec.*, No. 18-10228, 2019 WL 1324239 (E.D. Mich. Mar. 25, 2019) (Battani, J.). *See also Gross*, 247 F.Supp.3d at 829 ("The reasoning in *Rudd* is persuasive—the social security statute does not contemplate a bright line rule requiring the ALJ to base his or her RFC finding on a physician's opinion."). Moreover, in reaching his

conclusions, the ALJ made note of extensive, supportive portions of the medical record which did not require interpretation of raw medical data, as referenced in the above-described discussion of the physical MER.  (*See* Section D.1, R. at 21-23.)

###### b.    Substantial evidence supports the light work RFC.

In his function report, Plaintiff estimated that he could lift maybe 40-50 pounds and could walk "less than 1 mile" before needing to stop and rest.  (R. at 247; s*ee also* R. at 61.)  At the administrative hearing, Plaintiff's counsel stated that "the real major issue here is psychological."  (R. at 45.)  Moreover, Plaintiff testified that he can stand at the sink or counter for "[a]bout 15 minutes . . ." before he has to get off of his feet, and that, when he is able, he tries "to do things around the house to help [his] mother[,]" such as laundry, cooking, making beds, cutting grass and shoveling snow.  (R. at 61, 65-66.)  The Commissioner is correct in stating that "[t]hese types of abilities are consistent with light work."  (DE 16 at 7-8.)  *See Oliver v. Sec'y of Health & Human Servs.*, 804 F.2d 964, 966 (6th Cir. 1986) (substantial evidence supported light or sedentary work RFC where claimant "can drive a car for short distances," "walks four or five blocks per day," "can stand for approximately thirty minutes," and "can sit for one and one-half hours," notwithstanding "general muscular weakness and some pain[.]").

In his *reply*, Plaintiff attempts to distinguish *Shepard*, *Mokbel-Aljahmi* and

*Rudd*, and he points to several records in support of his argument that his case is

"similar to *Gross*, . . . because [his] imaging and examination findings show he had

medical impairments which needed to be translated into functional limitations."

(DE 17 at 1-4.)  Plaintiff cites records concerning:  **(a)** his left 4th metacarpal

fracture (R. at 486, 489-490, 404, 406); **(b)** the December 2, 2014 musculoskeletal

examination of feet and ankles (R. at 832); **(c)** a hospital note verifying that

Plaintiff was present for an endoscopic ultrasound on November 10, 2015 (R. at

494); **(d)** a February 23, 2015 abdomen ultrasound (R. at 744); **(e)** a March 3, 2015

abdominal examination (R. at 818); **(f)** the May 20, 2015 assessment of Stage 2-3

chronic kidney disease (R. at 691); **(g)** the June 8, 2015 diabetic foot examination

(R. at 796-797); **(h)** the March 9, 2016 physical examination (R. at 768, 771); and

**(i)** the June 21, 2016, constitutional examination (R. at 753).  (DE 17 at 3-4.)

Plaintiff claims that "[t]his raw medical data required interpretation . . . ."  (DE 17

at 4.)  However, with respect to imaging, as noted above, the ALJ expressly

acknowledged the 4th metacarpal shaft fracture and the abdomen ultrasound, as

well as several other imaging reports, and the ALJ also acknowledged the chronic

kidney disease diagnosis.  (R. at 21-23.)  As the Commissioner states, "[t]he ALJ

reasonably interpreted the objective evidence containing normal examination

findings … as indicative of an ability to perform at least light duty work[.]"  (DE 16 at 9, R. at 21-23.)

Moreover, Plaintiff's statement that the ALJ's error is harmful because, "under an appropriate analysis, [his] *subjective* complaints of pain as supported by medical opinion, would have resulted in a determination of disability . . . [,]" is a thinly-veiled and cursory credibility argument.  (*Id*. (emphasis added).)  In the absence of an undeveloped credibility argument, the Court has no reason to doubt the ALJ's representation that he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 . . . [,]" (R. at 20), which concern how the SSA evaluates "symptoms, including pain."

In sum, ALJ Dunn created a very "logical bridge" between the evidence upon which he relied and the conclusion that he reached.  *Gross*, 247 F. Supp.3d at 829-830.  The ALJ was not required to develop the record further, and substantial evidence supports the light work RFC.

### 2.  Mental health opinion evidence

At Step 3, the ALJ specifically referenced the notes from the April 2, 2014 psychosocial assessment with Deborah Casey, LMSW and Plaintiff's June 22, 2016 medication review.  (R. at 19, 377, 604.)  Within the RFC discussion, the

ALJ cited several mental health medical records, including:  **(a)** Duncan Magoon, M.D.'s January 17, 2014 mental capacity assessment (R. at 292-294); **(b)** various records from Genesee Health System and Hope Network, including Dr. Magoon's January 17, 2014 medication review (R. at 305-310); and, **(c)** Autumn Ward, LMSW's April 18, 2015 letter (R. at 492).  (R. at 21-24.)  After noting that Plaintiff's "primar[y] complaints at the time of hearing were psychological[,]" the ALJ explained:

> He reported multiple psychological symptoms.  However, treatment records indicate a good response to medication ([R. 604]).  There is no indication of any recent psychiatric hospitalization.  It appears that the claimant's mental impairments may be exacerbated by the physical symptoms and to some extent vice versa.  He requires a low-stress working environment with minimal contact with others.  His alleged mental impairments are also well supported, but not at a totally disabling level for a durational period.

(R. at 24.)[6]  *Then*, the ALJ proceeded to review the opinion evidence and, specifically:

- Assigned "great weight" to state agency psychological consultant Rom Kriauciunas, Ph.D.'s November 24, 2014 opinion that Plaintiff had moderate difficulties with maintaining social functioning and with concentration, persistence or pace (CPP) (R. at 84; *see also* 86-88)

- Cited social worker Ward's April 18, 2015 letter (R. at 492), noting that she was "a non-acceptable medical source[,]" and that her opinion was "inconsistent with treatment record[s] that

---

[6] The low stress environment was also intended to address Plaintiff's complaints of "fatigue and shortness of breath on exertion."  (R. at 23.)

reflect significant improvement with treatment, including her own treatment notes[,]" such as the June 22, 2016 medication review (R. at 604)[7]

- Assigned "partial weight" to Dr. Magoon's January 17, 2014 mental capacity assessment, which rated Plaintiff as markedly limited in understanding & memory, sustained concentration & persistence, social interaction, and adaptation (R. at 292-294), characterizing it as "consistent with total disability[.]"

(R. at 24.)

Plaintiff's argument that the ALJ "improperly subordinated" Dr. Magoon's treating opinion to Dr. Kriauciunas's non-examining opinion is unavailing. (DE 14 at 25-28.) Plaintiff claims that the ALJ did not comply with 20 C.F.R. §§ 404.1527(c), 416.927(c) ("How we weigh medical opinions."), where the "only reason" for discounting Dr. Magoon's opinion was that it occurred on an "early date" at "the initiation of treatment." (DE 14 at 26, R. at 24.) However, the ALJ continued to explain that "as soon as April 2014[,] [Plaintiff] appeared to be favorably responding to treatment with consist[e]nt GAF scores of 60 . . . . Treatment records do not support any durational period of severe mental limitations. The record supports only moderate limitations at most considering the

---

[7] To be sure, the June 22, 2016 medication review notes are not signed by a provider. (R. at 600-605.) However, Ward did sign records in June, August, September, October, and December 2015, as well as in January, April and August 2016. (R. at 606-607, 615-618, 625-628, 635-641 [Ex. 11F]; R. at 843-850 [Ex. 14F].) Among other things, notes from the April 18, 2016 visit state: "Depression symptoms have 'decreased' per verbal reports from [client], but continued coping strategies should be discussed, reviewed, and practiced." (R. at 607.)

entire record." (R. at 24.)[8]  It is clear that the ALJ considered the supportability

and/or consistency factors.  20 C.F.R. §§ 404.1527(c)(3),(4), 416.927(c)(3),(4).

Additionally, having identified these individuals as "the State agency

psychological consultant," a "Social Worker," and a "treating source," (R. at 24),

the ALJ took into consideration the examining and/or treatment relationship

factors.  20 C.F.R. §§ 404.1527(c)(1),(2), 416.927(c)(1),(2).  As the Undersigned

sees it, the ALJ was considering whether Dr. Magoon had seen Plaintiff "a number

of times and long enough to have obtained a longitudinal picture of [his]

impairment[.]"  20 C.F.R. §§ 404.1527(c)(2)(i), 416.927(c)(2)(i), which is a

legitimate consideration.

Relatedly, Plaintiff comments on the age of Dr. Magoon's January 17, 2014

opinion and Dr. Kriauciunas's November 24, 2014 opinion at the time of the ALJ's

April 3, 2017 opinion.  (DE 14 at 26-27, DE 17 at 4-5.)  However, for reasons

already mentioned, the ALJ did not solely discount Dr. Magoon's opinion as

"stale" or "remotely rendered."  In fact, at the time of the ALJ's decision, Dr.

Kriauciunas's non-examining opinion was more recent than treating psychiatrist

Dr. Magoon's opinion, *i.e.*, 861 compared with 1,172 days old.  Additionally, it

_____

cember 2015, as well as in January, April and August 2016.  (R. at 606-607, 615-
618, 625-628, 635-641 [Ex. 11F]; R. at 843-850 [Ex. 14F].)  Among other things,
notes from the April 18, 2016 visit state:  "Depression symptoms have 'decreased'
per verbal reports from [client], but continued coping strategies should be
discussed, reviewed, and practiced."  (R. at 607.)

appears that Dr. Kriauciunas had the benefit of records post-dating Dr. Magoon's initial assessment, and the disability determination explains that the January 17, 2014 medical source statement "does not have an accompanying explanation to justify the allegation of marked limitations in all areas.  The records from that provider do not support such a statement either as [Plaintiff] is noted to have improved with medication.  MSS given little weight."  (R. at 82-83, 85.)

Plaintiff alternatively asserts that the ALJ "should have requested an updated opinion from Dr. Magoon, or obtained a mental determination examination and functional assessment of Plaintiff's mental limitations."  (DE 14 at 28, DE 17 at 5-6.)  In support of this argument, he cites *Landsaw*, 803 F.2d at 214, quotes *Deskin*, 605 F. Supp. 2d at 911, and professes concern about the ALJ's "lay interpretation of raw medical data for the two years following" Dr. Magoon and Dr. Kriauciunas's opinions.  (DE 17 at 6.)  This does not amount to a developed argument that the regulations required more from the ALJ on the issue of mental health.

In sum, the ALJ provided "good reasons" for discounting Dr. Magoon's January 17, 2014 opinion.  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  *See also Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004).

### E.    Conclusion

Plaintiff has not shown legal error that would upend the ALJ's decision as to the physical RFC or the ALJ's treatment of mental health opinion evidence. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). For the foregoing reasons, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment (DE 14), **GRANT** Defendant's motion for summary judgment (DE 16), and **AFFIRM** the Commissioner of Social Security's decision.

## III.   PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Hum. Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.* Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.* If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated:  July 22, 2019                                    s/*Anthony P. Patti*
                                                         Anthony P. Patti
                                                         UNITED STATES MAGISTRATE JUDGE